IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DERRICK L WALKER,

    Plaintiff,

v.                                         CASE NO. 1:19-cv-182-AW-GRJ

PROGRESSIVE SELECT
INSURANCE COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this case by filing a *pro se* Complaint, ECF No. 1, and has been granted leave to proceed as a pauper by separate order. Plaintiff invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1. In summary, he sues Progressive Select Insurance Company for bad faith in connection with its refusal to pay uninsured/underinsured ("UM/UIM") benefits under a contract of automobile insurance. *Id.* This case is now before the Court on ECF No. 13, Defendant's motion to dismiss the Complaint for failure to state a claim upon which relief may be granted, for lack of subject matter jurisdiction because Plaintiff's claims are not ripe, or, alternatively, for a more definite statement. Pursuant to the Court's order to show cause, ECF No. 18, Plaintiff filed a response and exhibits in

opposition to the motion. ECF Nos. 20, 21, 22. Upon due consideration of the motion and Plaintiff's response, it is respectfully **RECOMMENDED** that the motion to dismiss be **GRANTED**.

## I. Plaintiff's Allegations

Regarding the basis for jurisdiction, Plaintiff alleges that his claims concern: "Unfair Trade Practice, Bad Faith, Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing, [and] Breach of Contract". ECF No. 1 at 3. The relevant factual allegations of the Complaint may be summarized as follows. Plaintiff alleges that on January 8, 2017, he was involved in a traffic accident for which he received a citation, although he says the other driver admitted fault. The citation was dismissed when the other driver failed to appear in court. He alleges that Progressive found him at fault and reported that he was convicted of a traffic violation. Progressive "settled with the other party unjustly and without cause or proper investigation in the amount of $1000." In November 2018, while trying to procure insurance through GEICO, Plaintiff says he learned that Progressive had found him at fault and claimed that he lied about "who was driving". He says that Progressive incorrectly stated that Walker was convicted of the citation. ECF No. 1 at 6.

In March 2017, Plaintiff was involved in an accident "involving loss of life". The other driver suffered a miscarriage following the accident. Progressive informed Plaintiff that the other driver (described by Plaintiff as the "at-fault party") stated that Plaintiff had run a red light. Plaintiff alleges that Progressive informed him he was not found at fault in the March 2017 accident, but that the other driver was paid the $50,000 bodily injury policy limit as a "business decision" to protect Plaintiff from a potential verdict. *Id.* at 6-7. Progressive attempted to force Plaintiff to attend independent medical evaluations. Plaintiff claims that Progressive initially misled him by stating that only $25,000 was paid to the other driver. *Id.* at 7.

In March 2018, Plaintiff was arrested for "criminal mischief" and the arresting officer cited Plaintiff's "paranoia regarding a car insurance claim" as a factor in his arrest. Plaintiff alleges that the arrest was reported in the news and that the charge was later dropped. *Id.* at 7.

In May 2018, Plaintiff submitted a demand letter to Progressive for UM/UIM benefits under the policy. Progressive denied the claim, citing lack of medical records. The UM/UIM claim was denied again in September 2018, with Progressive again citing lack of medical records. *Id.* at 7-8. Plaintiff made a complaint to the State of Florida Department of Financial

Services.  He alleges that Progressive "fabricated" its response to the State.  *Id.* at 8.

In October 2018, the "at fault's insurance company" (apparently from the March 2017 accident) settled with Plaintiff, and according to Plaintiff "cit[ed] their driver at fault".  Plaintiff contends that Progressive continued to deny his UM/UIM claim.  *Id.* at 8.

Plaintiff alleges that in March 2019, a Progressive claims representative falsely accused him of vandalizing her front door.  He says that a similar accusation against him had been "dropped", and that the accusations against him were a "direct fallout" from the actions of Progressive.  *Id.* at 9.[1]

Plaintiff alleges that Progressive failed to thoroughly investigate his claims arising from both accidents.  He says that Progressive "failed to defend against a third parties [sic] claim in both claims because neither party had any legal course of action against Walker as a result of both claims."  He contends that Progressive tried to have him arrested and accused him of vandalizing their property and the claims representative's

---

[1] Among the documents submitted by Plaintiff in opposition to dismissal is a copy of an Offense Report.  ECF No. 22-24.  The report indicates that a woman identified as a Progressive claims representative called the Sheriff to report damage to her front door that she suspected Plaintiff caused.  She told the officer that Plaintiff was suspected of vandalism at the Progressive office, and that Plaintiff has sent her threatening messages via social media.  Plaintiff denied the allegations.  *Id.*

property in order to "prevent having to tender the UM claim of $25,000". He alleges that Progressive "is intentionally undervaluing [Plaintiff's] UM claim to avoid having to tender the policy limit," and thereby admitting to bad-faith practices. He claims that he is permanently disabled. *Id.*

For relief, Plaintiff seeks $630,000 "to recoup the expenses incurred as a result of the bad faith conduct" of Progressive; UM benefits in the amount of $25,000 which were denied by "the bad faith conduct" of Progressive; and punitive damages in the amount of $29.4 million. *Id.* at 10.

## II. Motion to Dismiss

As grounds for dismissal, Progressive argues that all four causes of action identified in the Complaint attempt to assert a claim for damages arising from Progressive's claims handling and, as such, all four counts are, in substance, allegations of bad faith claims handling. Defendant contends that under Florida law, "such a cause of action is not ripe with regard to either accident, as there has been no determination of coverage, damages, and/or liability with respect to Plaintiff's underlying claims or any claims against Plaintiff arising from the accidents." ECF No. 13 at 2. Defendant contends that it is well-settled in Florida that a "bad faith suit is not legally cognizable – and therefore does not exist – until Plaintiff's claim for

uninsured benefits is resolved, because there must first be a determination of damages" that will occur in the underlying suit.  In the same vein, to the extent Plaintiff is alleging a bad-faith claim stemming from Progressive's handling of any third-party claim against Plaintiff, "a third-party claim for bad faith may only be pursued after an excess judgment against the insured party."  Progressive argues that because Plaintiff's bad-faith claims are not ripe, this Court lacks subject matter jurisdiction over his claims. ECF No. 13.

### III. Standard of Review

Determining whether a complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief may be granted turns on whether the plaintiff has alleged sufficient plausible facts to support his claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As the Supreme Court held in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555.

*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic

recitation of the elements of a . . . claim" are "not entitled to be assumed true . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009). To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." *Id.* "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Nevertheless, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Id.* (quoting *Estelle*, 429 U.S. at 106).

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases and controversies". *See Zinni v. ER Solutions, Inc.,* 692 F.3d 1162, 1166 (11th Cir. 2012). This "justiciability" requirement turns on a party's standing and the ripeness or mootness of a party's claim. *See id.*; *see also Susan B. Anthony List v. Driehaus*, ___ U.S. ___, 134 S.Ct. 2334, 2341–42 n.5 (2014) ("The doctrines of standing and ripeness

'originate' from the same Article III limitation" on judicial power to the resolution of "Cases and Controversies."). "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Susan B. Anthony List*, 134 S.Ct. at 2342 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010) ("The ripeness doctrine keeps federal courts from deciding cases prematurely.").

## IV. Discussion

Because jurisdiction is based on diversity of citizenship, and the forum state is Florida, the substantive law of Florida applies to Plaintiff's claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).[2]

As the Florida Supreme Court has explained, in the context of a claim for UM/UIM benefits:

> [A]n insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith.

---

[2] The Complaint alleges that this Court also has federal question jurisdiction under 28 U.S.C. § 1331, but the Complaint cites no federal statute or constitutional provision that is implicated in his claims. *See* ECF No. 1. Although Plaintiff points to numerous federal criminal statutes in his response, *see* ECF No. 20, as explained *infra* those laws do not provide a jurisdictional basis for Plaintiff's bad-faith insurance claims.

*Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991); *see also Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000) (holding that a first-party bad-faith action "is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract"); *GEICO Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 806 (Fla. 4th DCA 2014) ("In the context of a first-party bad faith action, the underlying action between the insured and the insurer establishes two elements that must exist for the bad faith cause of action to accrue—the liability of the uninsured tortfeasor and the extent of the plaintiff's damages in the underlying accident."); *see also Progressive Am. Ins. Co. v. Webster*, 2017 WL 10841497, at *1 (N.D. Fla. Sept. 7, 2017) (dismissing counterclaim for bad-faith failure to settle insurance claim as premature pursuant to *Blanchard* because there had been no determination of liability and extent of damages owed on the first-party insurance contract).

As Defendant points out, the Florida Supreme Court has explained the reasoning underlying this well-settled rule:

> If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim. Thus, an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. It follows that an insured's claim against an uninsured motorist carrier for failing to settle the

> claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist insurance benefits. Absent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle.

*Blanchard*, 575 So. 2d at 1291.

It is further well-settled in Florida that a third-party claim for bad faith may only be pursued after an excess judgment against the insured party. *United Servs. Auto. Assoc. v. Jennings*, 731 So.2d 1258, 1260 (Fla.1999); *Fidelity & Cas. Co. v. Cope*, 462 So. 2d 459 (Fla. 1985). "An excess judgment is defined as the difference between all available insurance coverage and the amount of the verdict recovered by the injured party." *Jennings*, 731 So.2d at 1259 n. 2 (Fla. 1999)(citing *McLeod v. Cont'l Ins. Co.*, 591 So.2d 621 (Fla.1992)); *Perera v. U.S.F.&G*, 35 So.3d 893, 902 (Fla. 2010); *see also Shuster v. South Broward Hospital*, 591 So.2d 174 (Fla. 1992) (an insurer who settles for an amount within the policy limits may not be sued for bad faith; such a settlement is within its discretion pursuant to the policy terms); *Kelly v. Williams*, 411 So.2d 902 (Fla. 5th DCA 1982) ("a cause of action for bad faith arises when the insured is legally obligated to pay a judgment that is in excess of his policy

limits."). As Defendant points out, there is no allegation that Plaintiff has become legally obligated to pay any sum in excess of his policy limits, and therefore he fails to state a cause of action for third-party bad faith.

Plaintiff's response in opposition to the motion to dismiss misses the mark. *See* ECF No. 20. Plaintiff restates his factual allegations and quotes at length from Florida insurance statutes, but he does not allege any additional facts showing that he can satisfy the threshold requirements under Florida law for pursuing his bad-faith claims against Progressive in this Court. He conclusionally alleges that Progressive and its representatives violated a plethora of federal criminal laws, but of course Plaintiff may not institute his own criminal proceedings. He also conclusionally alleges that Progressive violated federal civil rights statutes in connection with his claims, but there are no factual allegations that would support such a conclusion. *See* ECF No. 20.

In sum, at this juncture Plaintiff's bad-faith claims are foreclosed by settled Florida law and his allegations, even liberally construed, do not suggest that he can proceed in this Court under any other theory. Because Plaintiff's claims are unripe under Florida law, the Complaint does not present a justiciable claim. *See Webster,* 2017 WL 10841497, at *1. In *Webster,* the Court explained that "[a] claim is not ripe for adjudication if it

rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Ralston v. LM General Ins. Co.,* 2016 WL 6623728, at *3 (M.D .Fla. Nov. 9, 2016) (internal citations omitted)).  As in *Webster,* Plaintiff's success on his bad-faith claims is contingent on the receipt of a verdict against the alleged tortfeasor, or a verdict against Plaintiff in excess of the policy limits, and such contingent events do not give rise to a justiciable claim over which this Court should exercise its Article III authority.  *Id.*  As further explained in *Webster,* "'[p]laintiffs bear the burden of properly pleading standing and ripeness. . . . Where, as here, the Plaintiff cannot do so, this Court is required to dismiss the unripe claim[.]'"  *Id.* (quoting *Ralston,* 2016 WL 6623728, at *3) (internal citations omitted).  For these reasons, Plaintiff's Complaint is due to be dismissed without prejudice.

## V. Conclusion

It is respectfully **RECOMMENDED** that Defendants' motion to dismiss, ECF No. 13, should be **GRANTED** and the Complaint **DISMISSED without prejudice**.

**IN CHAMBERS** this 25th day of August 2020.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**